IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Charles C. Wessinger, Jr., | ) | C.A. No. 3:06-1346 |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| | ) | ON MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| Westinghouse Electric Company, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Defendant's motion for summary judgment.[1] For the reasons set forth below, the motion is granted as to the claim for termination in violation of public policy and the distinct claim for breach of the covenant of good faith and fair dealing. The motion is denied in all other respects

**INTRODUCTION**

Through this action, Plaintiff, Charles C. Wessinger, Jr. ("Wessinger"), seeks recovery from Defendant, Westinghouse Electric Company LLC, ("WEC"), for alleged wrongful termination of employment. Wessinger asserts three claims sounding in contract, each of which rests on the premise that WEC created an enforceable contract through the progressive disciplinary provisions published in its employee handbook and that it failed to follow those provisions in terminating him.

Wessinger also asserts a claim for termination in violation of public policy. This claim relates to allegations that the termination was, in fact, motivated by Plaintiff's refusal to participate

---

[1] Defendant's memoranda are not in compliance with the district's requirements that all text and footnotes be in at least 12 point type. *See* CM/ECF Standard Preferences. Counsel shall insure that any future filings meet this requirement.

1

in what he viewed as an unsafe work activity (the cutting of tubing in a particular manner) in the lab where he worked.

WEC seeks summary judgment on the contract-based claims based, in part, on arguments that: (1) the WEC handbook is not written in such a way as to give rise to a binding contract; and (2) even if a binding contract exists, the decision makers did not violate that contract because they acted reasonably in terminating Wessinger in light of the information known to them. As to the public policy claim, WEC argues that Wessinger has failed to proffer evidence of a "public policy" that could have been violated by the termination.

**STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the nonmoving party has the ultimate burden of proof on an issue, the moving party must identify the parts of the record that demonstrate the nonmoving party lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

## DISCUSSION

**I.     Wrongful Discharge in Violation of Public Policy**

South Carolina recognizes an exception to the at-will doctrine for terminations in violation of public policy. *See Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213 (S.C. 1985). This exception applies where the employee's discharge "constitutes violation of a clear mandate of public policy" such as when "an employer requires an at-will employee, as a condition of retaining employment, to violate the law." *Ludwick*, 337 S.E.2d at 216 (applying doctrine where employee was fired for honoring subpoena to appear at a hearing before the South Carolina Employment Security Commission).

The exception has also been applied where the reason for the employee's termination was itself a violation of criminal law. *See Garner v. Morrison Knudsen Corp*., 456 S.E.2d 907 (S.C. 1995) (quoted *infra*). The public policy exception is not, however, limited to such situations. *Id.* (holding that whether "the exception applies when an employee is terminated in retaliation for reporting and testifying about radioactive contamination and unsafe working conditions at a nuclear facility is a novel issue, and such issues should not ordinarily be decided in ruling on a 12(b)(6) motion to dismiss" but declining to hold that the allegations, if proven, would support a claim for termination in violation of public policy). Neither does it extend to every discharge arguably contrary to general concepts of public policy. *See Dockins v. Ingles Markets, Inc.,* 413 S.E.2d 18

(1992) (declining to expand exception to cover termination in retaliation for filing a complaint under the Fair Labor Standards Act); *Miller v. Fairfield Communities, Inc.,* 382 S.E.2d 16, 19 (S.C. App. 1989) (declining to expand exception to cover situation in which employer subjects an employee to civil sanctions as a condition of retaining employment).

In the present case, Wessinger alleges that he was retaliated against for complaining about a safety concern relating to a work assignment. The safety concern at issue related to a risk of minor injury to workers who performed the assigned work. The complaint was lodged with the co-worker who asked Wessinger to perform the task. This co-worker held some supervisory powers over Wessinger.[2]

Wessinger has, however, identified no policy or procedure of his employer, much less a policy or regulation promulgated by the state or federal government, which would have been violated by the activity. He simply states that he personally felt the task was unsafe. Even assuming he was correct in his assessment of the risks, his personal concerns do not constitute a " clear mandate of public policy" such as would give rise to a claim under *Ludwick.*

For a variety of reasons, *Garner* does not support a different result. First, Wessinger did not report the concern to anyone else or testify in relation to it (prior to this litigation). Further, while Wessinger's place of employment was a nuclear facility, the safety issue he raised did not involve radioactive contamination or any other risk particular to a nuclear facility. Indeed, similar concerns might be raised in any workplace where manual saws or other hand tools are used. Moreover, unlike

---

[2] This co-worker, David Brown ("Brown"), could assign work and had input into Wessinger's performance reviews. He also had authority to and, in fact, did report matters which might warrant disciplinary action and was consulted regarding disciplinary action to be taken. He did not, however, have actual authority to discipline, hire or fire Wessinger.

4

*Garner*, this case is not at the motion to dismiss stage, but at the summary judgment stage where a different standard applies.

For the reasons set forth above, Defendant's motion for summary judgment on the cause of action for termination in violation of public policy is granted.

## II.     Breach of Covenant of Good Faith and Fair Dealing

Wessinger's second cause of action is for breach of the implied covenant of good faith and fair dealing. He suggests that one panel of the South Carolina Court of Appeals has recognized this as an independent cause of action while another has not. *See* Dkt No. 21 at 17 (addressing *Shelton v. Oscar Mayer Foods Corp.*, 459 S.E.2d 851 (S.C. Ct. App. 1995) (represented as recognizing independent cause of action); & *RoTec Services, Inc. v. Encompass Services, Inc.*, 597 S.E.2d 881 (S.C. Ct. App. 2004) (not recognizing an independent cause of action)).

The court's full discussion of the relevant issue in *Shelton v. Oscar Mayer Foods Corp.*, 459 S.E.2d 851 (S.C. Ct. App. 1995), was as follows:

> Finally, Shelton argues the trial court erred in directing a verdict for Louis Rich on Shelton's *cause of action for breach of implied covenant of good faith and fair dealing*. We agree.
>
> Under South Carolina law, there exists in every contract an implied covenant of good faith and fair dealing. *Parker v. Byrd*, 309 S.C. 189, 420 S.E.2d 850 (1992). Further, we find no authoritative case law holding the implied covenant of good faith and fair dealing is not applicable to employment contracts that alter the employee's at-will status. If, therefore, the jury finds the handbook issued to Shelton created an employment contract that altered his at-will status, then the question of whether Louis Rich breached an implied covenant of good faith and fair dealing based on an employment contract is for the jury to decide.

*Id*. at 857. While the court was addressing the applicability of the implied covenant in the context of a separately stated claim, it does not expressly address the issue of whether the covenant should be treated as a separate claim.

5

That issue was, however, directly addressed in the more recent *RoTec Services* decision which held that South Carolina law does not recognize an *independent* cause of action for breach of the implied covenant of good faith and fair dealing. Instead, the breach of those covenants is subsumed by a cause of action for breach of contract.

*RoTec* represents both the more recent pronouncement and the only decision to directly address the question of whether there is a separate cause of action for breach of the covenant of good faith and fair dealing. The two opinions can, moreover, be reconciled by accepting that the implied covenant of good faith and fair dealing is equally applicable to a handbook-based contract as to any other contract, but that, as to all contracts, the covenant does not give rise to a separate cause of action. The court finds this to be the proper interpretation of South Carolina law and, therefore, finds that WEC is entitled to summary judgment on Wessinger's second cause of action.

### III. Breach of Contract Claims

Wessinger asserts two contract-based claims, one for breach of contract and one for breach of contract accompanied by a fraudulent act. Both claims are dependent on disciplinary provisions found in WEC's employee handbook which Wessinger maintains are stated in such a manner as to mandate that WEC follow certain progressive disciplinary provisions.

As a general rule, "an at-will employee may be terminated at any time for any reason or for no reason, with or without cause." *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 697 (S.C. 2005). However, "when an employee's at-will status has been altered by the terms of an employee handbook, an employee, when fired, may bring a cause of action for wrongful discharge based on breach of contract." *Id*. (citing *Conner v. Forest Acres*, 560 S.E.2d 606, 610 (S.C. 2002)).

For example, "[m]andatory, progressive discipline procedures may constitute enforceable promises." *Hessenthaler*, 616 S.E.2d at 698.. "Such procedures typically provide that an employee

6

may be fired only after certain steps are taken. When definite and mandatory, these procedures impose a limitation on the employer's right to terminate an employee at any time, for any reason.." *Id*. To support a contract claim, "general policy statements must be definitive in nature, promising specific treatment in specific situations." *Id.* (finding general assurance of nondiscrimination did not support a contract claim because it "was not specific and did not make any promises regarding disciplinary procedure or termination decisions").

> As stated in *Hassenthaler,*
>
> In most instances, judgment as a matter of law is inappropriate when a handbook contains both a disclaimer and a promise. . . . But a court should intervene to resolve the handbook issue as a matter of law . . . if the handbook statements and the disclaimer, taken together, establish beyond any doubt tha[t] an enforceable promise either does or does not exist.

*Id.* (internal citations and quotation marks omitted). *See also Conner*, 560 S.E.2d at 610 (noting that whether a contract exists should be submitted to the jury when the contract's "existence is questioned and the evidence is either conflicting or admits of more than one inference").

WEC's handbook contains language relating to a progressive discipline system referred to as the "Columbia Plant Rules of Conduct." Wessinger memorandum ex. B at 70. The handbook states that the progressive discipline policy is intended "to *assure* the *fair administration* of disciplinary action." *Id*. The handbook also states that "Managers are responsible for the *fair and consistent* administration of corrective action." *Id.* at 73. Other language refers to the policy as providing a guideline for employees. The handbook does not contain any disclaimer, much less a conspicuous one.

As WEC notes, its handbook does not use mandatory words such as "will" and "shall" in describing application of the disciplinary policy. Thus, the language does not support the existence

7

of a contract as strongly as the handbook at issue in *Conner*. *See Conner,* 560 S.E.2d at 611 n.4.[3] The handbook does, on the other hand, refer to assuring fairness and consistency. These statements are similar to some language in the handbook at issue in *Shelton v. Oscar Mayer Foods Corp.*, 459 S.E.2d 851, 856 (S.C. Ct. App. 1995), which the court found sufficient to support a handbook-based contract claim.[4]

The "assurance" language in the WEC handbook is followed by a categorization of offenses into three levels each of which provides a maximum punishment which "may" be imposed. Only category "A" offenses are described as subjecting the employee to immediate termination. The other offenses provide for lesser sanctions for a first offense. This is a more definitive policy than the general "nondiscrimination" statement found insufficient to support a contract claim in *Hessenthaler*.

Taken together, the court concludes that the language used in the WEC handbook and the absence of a disclaimer present a jury question as to whether the handbook constitutes a contract. This precludes summary judgment unless no reasonable jury could find that the contract was breached.

The latter question turns on whether the "employer had a reasonable good faith belief that sufficient cause existed for termination." *Connor v. City of Forest Acres*, 560 S.E.2d at 611 (quoting

---

[3] In *Connor*, the court found sufficient support for a handbook-based contract claim where the handbook stated "that: (1) violations of the Code of Conduct '*will* be disciplined,' (2) 'discipline *shall* be of an increasingly progressive nature,' and (3) 'all employees *shall* be treated fairly and consistently in all matters related to their employment.'").

[4] The handbook at issue in *Shelton* stated: "These rules are a *fair* way to protect everyone and the company will *[e]nsure* that these rules will be enforced *fairly and equally* with regard to all employees." *Id.* at 856 (emphasis added).

8

*Prescott v. Farmers Telephone Co-op., Inc.*, 491 S.E.2d 698, 705 (S.C. Ct. App.1997), *rev'd on other grounds*, 516 S.E.2d 923 (S.C. 1999)). This is generally a question of fact for the jury. *Connor*, 560 S.E.2d at 611 n.5 (stating that "it is generally a jury question as to whether the employer acted reasonably pursuant to the employment contract").

In the present case, whether WEC acted based on a reasonable good-faith belief in terminating Wessinger involves two subordinate inquiries: first, whether WEC was reasonable in treating the alleged offenses as category A offenses; and second, whether the decision makers had a reasonable good faith belief that Wessinger was guilty of those offenses. Having reviewed the evidence, the court concludes that there are genuine issues of material fact as to both issues.

The court also concludes that there is a genuine issue of material fact as to whether WEC committed a fraudulent act in connection with Wessinger's termination. As noted in *Conner,* fabrication of a pretextual reason for termination may constitute such an act. *Conner*, 560 S.E.2d at 612.

For the reasons set forth above, the court denies the motion for summary judgment as to the claims for breach of contract and breach of contract accompanied by a fraudulent act. However, as with the allegations relating to the breach of the covenant of good faith and fair dealing, the court concludes that there is only one cause of action for breach of contract. The allegations relating to breach of contract accompanied by a fraudulent act merely provide a basis for awarding punitive damages, if appropriate.

**TRIAL SCHEDULE**

The previously imposed stay is lifted and the following deadlines shall apply to the remaining proceedings:

1.  Mediation, pursuant to Local Civil Rules 16.04 – 16.12, shall be completed in this case on or before **May 17, 2007.** *See* Standing Order to Conduct Mediation 4:00-mc-5001, which sets forth mediation requirements and is found on the court's website under Judge Currie's forms (http://www.scd.uscourts.gov).

2.  In the event the matter is not resolved by mediation, the parties shall advise the court as to the anticipated length of trial no later than **May 24, 2007**.

3.  No later than **June 7, 2007**, the parties shall file and exchange Fed. R. Civ. P. 26(a)(3) pretrial disclosures. Within fourteen (14) days thereafter, a party shall file and exchange Fed. R. Civ. P. 26(a)(3) objections, any objections to use of a deposition designated by another party and any deposition counter-designations under Fed. R. Civ. P. 32(a)(4). *See* Local Civil Rule 30.03(J) (video deposition additional requirements).

4.  Motions in limine must be filed at least three weeks prior to jury selection.

5.  Parties shall furnish the court pretrial briefs five (5) business days prior to the date set for jury selection (Local Civil Rule 26.05).[5] Attorneys shall meet at least five (5) business days prior to the date set for submission of pretrial briefs for the purpose of exchanging and marking all exhibits. *See* Local Civil Rule 26.07.

6.  This case shall be called for trial during the **July 2007** term of court, with jury selection set for **July 12, 2007.**

---

[5] Judge Currie requires that pretrial briefs be filed with the Clerk of Court as part of the public record and served on opposing parties.

**CONCLUSION**

For the reasons set forth above, WEC's motion for summary judgment is granted as to the claim for termination in violation of public policy and for the independent claim for violation of the covenant of good faith and fair dealing. The motion is otherwise denied and the matter shall proceed to trial under the schedule set forth above.

IT IS SO ORDERED.

    s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
April 16, 2007

C:\temp\notesB0AA3C\06-1346wessingervwecpartialsjorder.wpd