IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Charles C. Wessinger, Jr., | ) | C.A. No. 3:06-1346 |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| | ) | ON MOTIONS FOR |
| | ) | NEW TRIAL AND SANCTIONS |
| Westinghouse Electric Company, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
|_____ | ) | |

This matter is before the court on Plaintiff's motions for a new trial and for sanctions. For the reasons set forth below, both motions are denied.

Plaintiff's motions rest, in large measure, on arguments that he was unfairly prejudiced by Defendant's pretrial filing of an allegedly false affidavit and by Defendant's erroneous prediction of testimony to be offered by the affiant, Glennis Williams ("Williams").[1] Plaintiff asserts that this led the court to allow introduction of improper and unfairly prejudicial evidence regarding Plaintiff's employment history. Plaintiff also asserts that the court made other errors in the introduction of evidence, particularly relating to sexually explicit photographs which one employee testified he observed on Plaintiff's computer at some unspecified point in time.

The allegedly false affidavit statements involve the precise nature of Williams' role in Plaintiff's termination. Williams averred that she was the ultimate decision maker. *See* Dkt. No. 19-2 (Williams' affidavit filed in support of motion for summary judgment). After disclosing the specifics of her investigation, including her close collaboration with Gary Uding, Plaintiff's

---

[1] Williams was the human resources generalist who was involved in Plaintiff's termination decision.

1

supervisor, Williams states as follows: "I discussed the matter with Gary Uding and decided to terminate Plaintiff's employment on July 13, 2005, pursuant to the employee handbook and Code of Business Ethics." Williams affid. ¶ 6.

This statement seems to suggest that Williams was the ultimate decision maker and that she conferred with Uding in making this decision. While this is not the only possible interpretation of Williams' affidavit, it is certainly a reasonable one. More critically, it is the interpretation which Defendant strongly advanced in support of its motion for summary judgment and in opposition to Plaintiff's motions in limine. *See, e.g.*, Dkt. No. 20 at 8 (memorandum in support of summary judgment stating "Ms. Williams, with Mr. Uding's consent, then made the decision to terminate Plaintiff."); Dkt. No. 77 at 2 (Defendant's memorandum in opposition to Plaintiff's motion in limine stating that "Plaintiff failed to depose the ultimate decision maker in this case – Glennis Williams – and, as such, is completely unaware of what materials Ms. Williams reviewed in the investigation leading to Plaintiff's termination."). Defendant made similar arguments in early stages of the trial. *See, e.g.*, Trial trans. at 1-141, 1-159, 1-160 ( the "she" referred to in these transcript pages would be Williams).

Defendant abandoned the position that Williams was the ultimate decision maker only after Plaintiff made the surprise move of calling Williams in his case in chief. *See generally* Trial Tr. at 1-238 (Williams' testimony that she made the recommendation and Uding made the decision and clarifying that she was "one of the decision makers"). During her direct examination, Williams admitted there were multiple false statements (or at least overstatements) in her affidavit. *See* Trial Tr. at 2-5 to 2-9, 2-15 to 2-16 & 2-18.

**STANDARD**

A trial court may grant a new trial only in three circumstances: (1) when the verdict is against the clear weight of the evidence; (2) when the verdict is based upon evidence which is false; and (3) when the verdict will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998) (quoting, *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)). Erroneous evidentiary rulings will only support the granting of a new trial when it is "reasonably clear that prejudicial error crept into the record or that substantial justice has not been done[.]" *Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am.*, 994 F. Supp. 350, 358 (W.D.N.C. 1997) (quoting, Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2803 (1995)). "If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is expected that [the judge] will grant a new trial." *Id.* However, Rule 61 of the Federal Rules of Civil Procedure provides as follows:

> Unless justice requires otherwise, no error in admitting or excluding evidence–or any other error by the court or a party– is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Fed. R. Civ. P. 61 (revisions effective December 1, 2007).

**DISCUSSION**

**Williams' Affidavit and Testimony.** The court agrees that Williams' affidavit overstated her role in the decision-making process. When coupled with Defendant's repeated characterization of this affidavit as establishing that Williams was the *ultimate* decision maker, this interpretation

3

becomes the most reasonable one, particularly given that Williams was and remains an employee of Defendant. In light of Williams' trial testimony, conceding that she was only one of the decision makers and that her role was, in fact, limited to recommending termination, the court finds Defendant's characterization of and reliance on this aspect of the affidavit to be overzealous advocacy. This conclusion is further supported by Defendant's shifting position (particularly after the close of discovery) as to who was involved in and made the ultimate termination decision.[2]

This is not, however, enough to establish grounds for a new trial or sanctions. Regardless of the apparent misstatements in Williams' affidavit and Defendant's mischaracterization of Williams' role, this did not result in a verdict which was against the clear weight of the evidence or based on false evidence. This is largely because Plaintiff was able to thoroughly expose the alleged misstatements during his examination of Williams. *E.g.,* Trial Tr. at 2-5 to 2-18.[3] Neither did any misimpression caused by the affidavit influence the court's evidentiary rulings. *See, e.g.,* Motion in Limine Hearing Tr. at 13-15 (found in Dkt. No. 134-2). It is also apparent that Plaintiff was not caught off guard or unfairly prejudiced by any reliance on any false statement in the affidavit. This is because Plaintiff, at all times, maintained that Williams was not the sole or ultimate decision

---

[2] Defendant first identified three individuals as being involved in the termination decision: Williams, Uding and David Brown. During discovery, Plaintiff deposed Uding and Brown, but did not depose Williams who had moved out-of-state. Only after the close of discovery (and Plaintiff's loss of the opportunity to depose her) did Defendant suggest that Williams was the ultimate decision maker. This was done through the submission of her misleading affidavit which Defendant characterized as establishing that Williams was the sole decision maker. Under these circumstances, Defendant's suggestion that Plaintiff is making too much of a lay person's understanding of her role is not well taken.

[3] The affidavit itself reveals that Uding was involved in the decision making process, even if Williams was unclear as to who made the ultimate decision. Plaintiff was, in any event, able to fully impeach Williams in regard to the apparent misstatements in her affidavit.

4

maker. *See, e.g.,* Motion in Limine Hearing Tr. at 14.[4]

**Prior Disciplinary Actions and Evaluations.** Plaintiff's other arguments for a new trial focus on undue prejudice which he asserts resulted from the admission of evidence regarding events which occurred earlier in his employment history and were unrelated to his termination. The primary difficulty with these arguments is that Plaintiff opened the door to consideration of certain portions of his employment history by suggesting through his opening statement and testimony that he had a history of good performance. Moreover, the court did not admit many details regarding Plaintiff's prior ratings, warnings or discipline.

The court did allow Defendant to question Plaintiff regarding limited aspects of his prior performance and employment history. The court did this, in part, based on a prediction of testimony to be offered by Williams. While Williams retracted the claim that she was the "ultimate" decision maker, she, nonetheless, testified that she was primarily responsible for the investigation leading to Plaintiff's termination and that her recommendation that Plaintiff be terminated was relied on by Uding in making the ultimate decision. Further, Williams testified that she reviewed Plaintiff's prior employment history and considered it in making her recommendation. For example, while Williams did not identify the evaluations by year, she testified that she reviewed Plaintiff's "personnel file to see if there was any past behavior that maybe is a trend or repeated behavior." Trial Tr. at 2-113.

---

[4] Plaintiff also suggests that the court relied on the allegedly false statements in Williams' affidavit in granting Defendant's motion for summary judgment on Plaintiff's claim for termination in violation of public policy. This is incorrect as that decision was not based on the identity of the decision maker. *See* Dkt. No. 35 at 4 (noting that "Wessinger has . . . identified no policy or procedure of his employer, much less a policy or regulation promulgated by the state or federal government, which would have been violated by the activity. He simply states that he personally felt the task was unsafe. Even assuming he was correct in his assessment of the risks, his personal concerns do not constitute a " clear mandate of public policy" such as would give rise to a claim under [*Ludwick v. This Minute of Carolina, Inc*., 337 S.E.2d 213 (S.C. 1985).].").

5

She also indicated that she considered Plaintiff's work history. Trial Tr. at 2-112. For example, Williams referred to an altercation between Plaintiff and his brother (also an employee of Defendant) and related counseling or discipline which occurred in 1997, in explaining why she credited claims by Plaintiff's coworkers that Plaintiff could be intimidating and had engaged in harassing behavior. Trial Tr. at 2-123 to 2-129.

The permitted inquiries relating to Plaintiff's job history were not, in context, unfair or misleading. For example, although Defendant attempted to question Plaintiff about prior "warnings" relating to job performance, a subject matter related to one of the reasons for his termination, Plaintiff's responses made clear that there were no disciplinary "warnings" relating to job performance, only comments made in his performance appraisals. Plaintiff also made clear that he was not the subject of any active "warnings" relevant to the reasons given for his termination.[5] Thus, any discussion of prior warnings or difficulties relating to job performance cannot be presumed to have misled the jury or otherwise resulted in an unfair trial.

The discussion of sexually explicit materials or "pornography," likewise, did not result in fundamental unfairness. One of the stated grounds for Plaintiff's termination was alleged misuse of the internet. The termination letter indicated that the investigation revealed both excessive and improper use. The referenced improper use was described as accessing websites "of a highly inappropriate nature." Dkt. No. 129-2 at 3-4 (termination letter).

---

[5] Williams also testified, unequivocally and repeatedly, that Plaintiff was terminated for violation of provisions which did not require a warning and that no warnings specific to the particular matters for which he was terminated were given. *E.g.,* Trial Tr. at 1-216, 1-238, 2-12 to 2-13. *See also* 1-220 (conceding that Plaintiff was also not afforded the opportunity to improve through a Performance Improvement Plan). Her discussion of prior performance and discipline was presented in the context of explaining why she gave credence to the more recent allegations and why she did not recommend a lesser punishment despite the existence of a Class A offense. Trial Tr. at 2-129.

The issue for trial, then, was the reasonableness of Defendant's belief that Plaintiff had committed Class A offenses in one or both of these particulars: excessiveness and inappropriateness. Williams was questioned extensively during Plaintiff's case-in-chief as to the latter. *See* Trial Tr. at 2-25 to 2-27; 2-40 to 2-42, 2-54; 2-95 to 2-103. It was through this questioning that Plaintiff's counsel introduced the word pornography into the trial. *E.g.,* Trial Tr. at 2-25. In any event, the issue was thoroughly and properly explored by Plaintiff's counsel during Plaintiff's case-in-chief.

During cross-examination of David Brown, Plaintiff again explored the topic, asking Brown if he had ever seen other employees accessing "inappropriate websites, for pornography." Trial Tr. at 3-26. When Brown said no, he was impeached using selected portions of his deposition testimony in which he had conceded that he had probably seen other employees accessing "inappropriate" websites. Trial Tr. at 3-27 to 3-28.[6] The portion of Brown's deposition quoted by Plaintiff's counsel ended with Brown's partial response to an inquiry whether he had ever seen *Plaintiff* access inappropriate websites or pictures on his office computer. Trial Tr. at 3-28 to 3-29. The portion in which Brown said that he had not seen Plaintiff access inappropriate websites was included.

This left off a portion of the same response in which Brown stated that he may have seen an e-mail attachment with an inappropriate picture on Plaintiff's computer. Dkt. No. 134 at 24 (quoting Brown dep.). In light of the full response, the portion quoted was somewhat misleading. It, therefore, opened the door to clarification through further questioning of Brown or others as to this

---

[6] Notably, the reference to "inappropriate" websites in the deposition question was not defined in any way and there was no related reference to "pornography." Thus, Brown's deposition concession that he had probably seen "inappropriate" websites accessed was not necessarily inconsistent with his trial denial of having seen employees access inappropriate websites *for pornography*.

7

general subject matter, even assuming the door had not been earlier opened by Plaintiff.[7]

Defendant subsequently elicited testimony from Greg Culley which filled in what had been left out of the quoted portions of Brown's deposition, that Culley had seen pictures of unclothed women in an e-mail attachment on Plaintiff's computer. Trial Tr. at 3-76 to 3-77. Plaintiff objected to this testimony on the grounds that Culley had not been disclosed as a witness to such activity and for lack of foundation (that there was no indication the attachment had been obtained from the internet). Defendant responded, and the court agrees, that the door had by that point been opened to introduction of evidence relating to the e-mail attachment. Even if the door had not been opened and the ruling was improper, the introduction of this brief comment was not sufficient to impair the fairness of the trial. This is particularly so given the extensive evidence that Defendant *reasonably believed* that Plaintiff had accessed inappropriate websites, even if he had not in fact done so. Further, this was not the only ground on which Plaintiff was terminated.

Plaintiff also challenges as unfairly prejudicial Williams' reference to an incident in which Plaintiff allegedly used profanity in referring to another human resources officer. Williams' comment was non-responsive to the question asked and was immediately addressed by the court's instruction that the jury should disregard the comment. Trial Tr. at 2-120. No further limiting instruction was requested. The court does not believe that anything more was required or that this isolated comment introduced unfair prejudice into the case.

---

[7] The issue of inappropriate attachments to a specific e-mail (which may have been this same e-mail) was initially raised during Defendant's cross examination of Plaintiff. Trial Tr. at 1-155 to 1-162. After substantial discussion, the court sustained the objection. Trial Tr. at 1-162 (directing defense counsel to "leave the e-mail out"). Plaintiff then reintroduced the topic during his direct examination of Williams. Trial Tr. at 2-97 (asking "And you don't have any direct evidence that Mr. Wessinger ever sent any sexually explict e-mails to anyone like [defense counsel] asked [Plaintiff] on cross-examination yesterday?").

8

**CONCLUSION**

Having carefully considered the arguments of the parties and the materials offered in support of and opposition to Plaintiff's motions, the court finds no grounds sufficient to support the granting of a new trial. While the court agrees that Defendant's shifting position as to the identity of the decision maker may have amounted to overzealous advocacy, it does not find impropriety sufficient to support an award of sanctions. The court, therefore, denies both Plaintiff's motion for a new trial and Plaintiff's motion for sanctions.

IT IS SO ORDERED.

S/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
May 8, 2008

C:\Documents and Settings\Glp59\Local Settings\Temp\notesE1EF34\06-1346wessingervwec post trial motions.wpd